UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA INC,<br><br>　　　　　　　Petitioner,<br><br>　　v.<br><br>VERITY WIRELESS INC,<br><br>　　　　　　　Respondent. | CASE NO. 2:21-cv-00733-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

　　　　T-Mobile USA, Inc. ("T-Mobile") petitions the Court, pursuant to 9 U.S.C. §§ 9 and 13 and Fed. R. Civ. P. 15(a)(1), to confirm interim relief in the form of a temporary injunction ("Injunction") granted to T-Mobile by The Hon. Faith Ireland (Ret.) (the "Arbitrator") on May 13, 2021, in the matter styled *T-Mobile USA, Inc. v. Verity Wireless, Inc.*, JAMS Arbitration Reference No. 1160024282 (the "Arbitration"). Dkt. 13 (Amended Petition). The Injunction prohibits Verity Wireless, Inc. ("Verity") from selling or transferring its T-Mobile stores except to T-Mobile or other T-Mobile-approved dealers and not to T-Mobile competitors. *Id.*, Ex. 4.

　　　　Verity Wireless, Inc. ("Verity") opposes the petition. Dkt. 19. Verity contends the Injunction is an interlocutory order not capable of confirmation. Alternative, Verity contends that the Injunction should be vacated because the Arbitrator refused to consider "material evidence." Dkt. 19, pp. 9-11.

　　　　The undersigned recommends that T-Mobile's petition be granted.

REPORT AND RECOMMENDATION - 1

BACKGROUND

Verity was, in accordance with four Retail Services Agreements with T-Mobile (the "Agreements"), each effective June 1, 2020, an authorized retail dealer for T-Mobile, operating T-Mobile stores in Colorado, Washington, and Northern and Southern California. The parties agree that the Agreements are identical in all material respects. *See* Dkt. 13, Ex. 1. Each Agreement provides that disputes between the parties shall be submitted to JAMS for arbitration and administered pursuant to JAMS Comprehensive Rules and Procedures (the "Rules"). Dkt. 13, Ex. 1, § 16.

On March 19, 2021, T-Mobile notified Verity that it was terminating the Agreements, effective May 1, 2012, because Verity had materially breached the Agreements by engaging in churn fraud by deactivating Sprint customers and activating them on the T-Mobile network. Dkt. 13, ¶ 10; *see also* Dkt. 8-1, Ex. A, Declaration of Anthony Farinola (filed in the Arbitration on behalf of Verity). On March 31, 2021, Verity closed its stores and refused T-Mobile's demands to execute the Transitions Services Agreements that each Agreement requires. Dkt. 13, ¶ 11.

1. The Arbitration

The Arbitration was initiated by T-Mobile on April 8, 2021. Dkt. 13, Ex. 2 (Order appointing the Hon. Faith Ireland as Emergency Arbitrator). JAMS Rule 2(c) creates Emergency Relief Procedures that permit a party to seek emergency relief by "notify[ing] JAMS and all other Parties in writing of the relief sought and the basis for an award of such relief." JAMS Rule 2(c)(i).

The Agreements provide for the determination of preliminary and ancillary relief by an arbitrator and state that any award rendered in the arbitration "will be final, non-appealable, and

binding on both parties, except as authorized under applicable state or federal law." Dkt. 13, Ex. 1, ¶¶ 16.4, 16.5.

T-Mobile first filed a request for Emergency Relief, seeking an order requiring Verity to allow T-Mobile to obtain possession of inventory and other T-Mobile assets in Verity's closed stores. The parties resolved this issue by stipulation, and it is not at issue here. Dkt. 13, Ex. 3.

T-Mobile filed a Second Request for Emergency Relief to enjoin Verity from transferring T-Mobile stores except to T-Mobile or to T-Mobile-approved dealers, and to prohibit Verity from transferring T-Mobile stores to T-Mobile competitors. Dkt. 13, ¶ 17; *see also*, Ex. 1, § 13.1.3. The Agreements prohibit Verity, notwithstanding any other provision of the Agreements, from competing with T-Mobile for one year following termination, and Section 13.1.3 of the Agreements specifically prohibits Verity and its principals from "directly or indirectly sell[ing], assign[ing], or otherwise transfer[ring] any [store] to a wireless service provider (carrier or agent/dealer) in the business of offering, providing, marketing, procuring, or referring customers in a[] manner that competes with [T-Mobile] or its dealers within the Area" described in each Agreement. *Id.*

The Agreements further provide that a breach of Section 13.1 "will result in irreparable harm to T-Mobile, and monetary damages would be an inadequate remedy" for such a breach, and that "T-Mobile may seek temporary, preliminary and permanent injunctive relief with respect to any such breach by provider." Dkt. 13, Ex. 1, Agreements, § 13.1.4.

Verity responded to the Second Emergency Request on May 4, 2021. The Arbitrator set a reply deadline and a hearing on the Second Request for Emergency Relief on May 5, 2021, and the Arbitrator heard oral arguments on that day. The Arbitrator also invited the parties to supplement or amend their pleadings by May 7, 2021 at 4:00 PM PT. T-Mobile submitted a

statement of Additional and Amended Claims, and Verity submitted a supplemental response in opposition to the Second Request for Emergency Relief. Dkt. 13, ¶ 21. After requesting and receiving permission from the Arbitrator, T-Mobile submitted a reply to Verity's supplemental response, on May 11, 2021. *Id.* On May 13, 2021, the Arbitrator entered the Temporary Injunction. Dkt. 13, Ex. 4.

2.  The Injunction

The Arbitrator determined that the only issue for determination in the Arbitration hearing was whether T-Mobile was entitled under the Agreements to a temporary injunction against Verity from selling any of its remaining stores to any entity other than T-Mobile or an entity approved by T-Mobile. Dkt. 13, Ex. 4, p. 1. The Arbitrator specifically noted several other raised by the parties must await factual determination.[1]

The Arbitrator concluded that Section 13 of the Agreements clearly prohibits the sale of stores to competitors. At the hearing, Verity acknowledged its intention to sell its remaining stores to Wecan, a T-Mobile competitor and acknowledged irreparable harm in § 13.1.4 of the Agreements. Dkt. 13, Ex. 4, p. 3. Thus, the Arbitrator held that a "temporarily [sic] injunction is necessary to preserve the status quo (a) prohibiting Verity from selling or transferring its Locations except to T-Mobile or to dealers with prior, express T-Mobile approval; (b) prohibiting Verity from directly or indirectly selling, transferring, or assigning any Location to any competitor or competitor's agents." *Id.*

---

[1] Among the remaining issues noted by the Arbitrator – whether: (i) T-Mobile was entitled to terminate its agreement without notice; (ii) T-Mobile unlawfully permitted a sale to a T-Mobile approved provider; (iii) Verity violated the Agreements in its handling of subscribers; (iv) T-Mobile breached the Agreements by withholding commissions; (v) Verity breached Agreements by closing stores without required notice to T-Mobile; and, (vi) the Agreements are contracts of adhesion. Dkt. 13, Ex. 4, p. 4 n.i.

REPORT AND RECOMMENDATION - 4

The Arbitrator also specified that the temporary "order shall remain in effect until further order of the arbitrator" and that there was no "showing of the need for a T- Mobile to file a bond." *Id.*

## LEGAL STANDARDS

"The use of arbitration as a means of settling disputes has been accorded specific Congressional endorsement in the [Federal Arbitration Act ("FAA")] and should be encouraged by the federal courts." *Aerojet–General Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973). "The basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings." *Id.* Section 9 of the FAA provides for judicial confirmation of arbitration awards:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Section 10 provides for the limited circumstances in which a court may vacate an arbitration award:

> (1) Where the award was procured by corruption, fraud, or undue means;
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

REPORT AND RECOMMENDATION - 5

9 U.S.C. § 10(a). Sections 10 and 11 "provide exclusive regimes for the review provided by the statute." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008) (holding the FAA's grounds for vacatur and modification could not be supplemented by contract). Sections 9, 10, and 11 of the FAA "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id*. at 588.

Judicial review of an arbitration award is "both limited and highly deferential" and the arbitration award "may be vacated only if it is 'completely irrational' or 'constitutes manifest disregard of the law.'" *Comedy Club, Inc. v. Improv W. Assocs*., 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp*., 358 F.3d 1187, 1193 (9th Cir. 2004)). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review" of an arbitration award under the FAA. ); *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (quoting *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009)).

"[Section 10] of the FAA provides no authorization for a merits review." *Biller v. Toyota Motor Corp*., 668 F.3d 655, 664 (9th Cir. 2012). Confirmation of an arbitration award typically "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Romero v. Citibank USA, Nat'l Ass'n*, 551 F. Supp. 2d 1010, 1014 (E.D. Cal. 2008). The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (citing *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1489 (9th Cir. 1991)).

## DISCUSSION

### A. Jurisdiction

The parties do not dispute that this Court has subject matter jurisdiction to confirm the Injunction as there is complete diversity of citizenship between the parties (Delaware and Colorado corporations) and the amount in controversy exceeds $75,000. The parties stipulated to personal jurisdiction of this Court and venue in this District. *See* Dkt. 13, Ex. 1.

### B. Finality of the Injunction

It is not disputed that the parties' Agreements incorporate the JAMS Comprehensive Arbitration Rules, which permit litigants to seek "an Award of [emergency] relief," empower an emergency arbitrator to enter an "order or Award granting or denying the relief," and allow that Award to be confirmed "in conformity with the Federal Arbitration Act." JAMS Rules 2(c)(i), 2(c)(iv), and 25, https://www.jamsadr.com/rules-comprehensive-arbitration/.

It is also not disputed that the Injunction is calculated to preserve the status quo or that it provides temporary equitable relief. The Arbitrator specifically found that the Injunction was "necessary to preserve the status quo" and that it should "remain in effect until further order of the arbitrator." Dkt. 13, Ex. 4. Verity argues however, that the Injunction is an interlocutory, non-final order not capable of confirmation because the Injunction is subject to modification during the arbitration. Dkt. 19, p. 10.

Historically, for an arbitration award to be subject to judicial review, it must be final and binding as to all the issues presented to the arbitrator. *See Millmen Local 550, United Broth. of Carpenters and Joiners of Am., AFL–CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987). "[B]ecause of the Congressional policy favoring arbitration when agreed to by the parties, judicial review of non-final arbitration awards 'should be indulged, if at all, only in the most

REPORT AND RECOMMENDATION - 7

extreme cases.'" *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991) (quoting *Aerojet–General Corp.*, 478 F.2d at 251).

In *Pacific Reinsurance*, the Ninth Circuit considered as a matter of first impression "[w]hether temporary equitable relief that is necessary to prevent a potential final award from being meaningless can be confirmed and enforced in the district courts." 935 F.2d at 1022. Prior to deciding the merits of the arbitration, the arbitration panel in that case issued an 'interim final order' which created an escrow account and ordered the deposit of disputed funds in the escrow account. *Id*. The Ninth Circuit stated that judicial confirmation of the "interim final award" was "not inconsistent ... with the policy favoring arbitration …" and held that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful ... are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." *Id*.

Here, the Injunction prohibits Verity from causing irreparable harm to T-Mobile by transferring T-Mobile stores to T-Mobile competitors during the pendency of the Arbitration. T-Mobile asks that the Court confirm the Injunction to ensure that Verity does not violate T-Mobile's rights (as reiterated by the Arbitrator), thereby rendering meaningless a final award on the merits. Contrary to Verity's argument, the fact that the Injunction can be modified upon a later order of the arbitrator is no reason to deny confirmation. *See Vital Pharmceuticals, d/b/a VPX Sports v. Pepsico, Inc.*, 2020 WL 7625226, at *3, --- F.Supp.3d --- (S.D. Florida, December 21, 2020) (explaining that confirmation of an injunction preserved enjoined party's right to seek superseding award from arbitration panel "without rendering the injunctive relief granted therein meaningless"). In fact, the order confirmed in *Pacific Reinsurance* was also in the nature of a preliminary injunction and could be modified later in arbitration – it required escrow of amounts

that were "apparently due" under agreements that had been challenged in the arbitration as invalid, "pending the arbitrators' decision [on] validity." 935 F.3d at 1021-22.

Verity next contends that the Injunction is akin to a temporary restraining order rather than a preliminary injunction. Dkt. 19, p. 11 n.4. However, unlike a temporary injunction, the Injunction was not issued without notice to Verity and does not expire after 14 days. *See* Fed. R. Civ. P. 65(b)(2). In fact, in a case invoked by Verity, the Ninth Circuit held that an order denominated as a temporary restraining order, which expired within 30 days, was a reviewable preliminary injunction because its bases were strongly challenged, with "both parties having the opportunity to file extensive written materials and present oral argument," as occurred here. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002).

Verity next argues that *Pacific Reinsurance* does not apply where an emergency arbitrator enters a preliminary injunction and expressly reserves the arbitrator's authority to modify or vacate it. Dkt. 19, p. 8 (citing *Chinmax Med. Sys. Inc. v. Alere San Diego, Inc.*, No. 10CV2467 WQH NLS, 2011 WL 2135350, at *5 (S.D. Cal. May 27, 2011)). The district court in *Chinmax* also recognized that courts "go beyond a document's heading and delve into its substance and impact to determine whether the decision is final." *Id.* (citing *Publicis Communication v. True North Communications, Inc.*, 206 F.3d 725, 729 (7th Cir. 2000) and *Pacific Reinsurance*, 935 F.2d at 1030). In *Chinmax*, the temporary order expressly stated that it *was issued to facilitate a conservancy order by the full arbitration panel*, thus, the district court concluded that the Arbitrator did not intend the interim order to be a final order subject to judicial review.[2]

---

[2] In *Publicis*, the Seventh Circuit held that the arbitrator's interim order to turn over tax records was a final, confirmable decision. 206 F.3d at 725. *See also*, *Yasuda Fire & Marine Insurance Company of Europe v. Continental Casualty Company*, 37 F.3d 345, 348 (7th Cir.1994),

REPORT AND RECOMMENDATION - 9

The Ninth Circuit is concerned about the substance of the order, *i.e.*, whether it provides temporary equitable relief that must be confirmed when granted to ensure that a final award may be meaningful—not whether the arbitrator who entered it was appointed on an emergency or permanent basis. *See also*, *Publicis Commc'n.*, 206 F.3d at 728 ("The content of a decision—not its nomenclature—determines finality.").

Finally, the Court notes that Verity agreed that "[a]ny award rendered in the arbitration will be final . . . except as authorized under applicable state or federal law," and that "[j]udgment may be entered thereon in any court of competent jurisdiction." Dkt. 13, Ex. 1, Agreement, § 16.5. It cannot contest the Court's power to confirm the Injunction. *See Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 909 & n.4 (S.D.N.Y.) (order requiring sequestration of funds did not definitively resolve which party breached underlying contract, but was nonetheless final and confirmable in part because "[a]ny award is final according to the terms of the contract"), *aff'd*, 689 F.2d 301 (2d Cir. 1982).

Accordingly, the undersigned concludes that the Injunction is a final order subject to confirmation.

C. <u>Material Evidence</u>

Verity next argues that the Injunction should be vacated pursuant to Section 10(a)(3) of the FAA, because the Arbitrator refused to consider "evidence pertinent and material to the controversy." Dkt. 19, pp. 13-14 (citing 9 U.S.C.A. ¶ 10(a)(3).

"Arbitrators enjoy wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." *United States Life Ins. Co. v. Superior Nat'l Ins.*

---

incorporating *Pacific Reinsurance's* rationale that, where "an order is necessary to prevent the final award from becoming meaningless, the order was final and could be immediately challenged."

*Co.*, 591 F.3d 1167, 1175 (9th Cir. 2010). To support vacatur, the arbitrator's refusal to consider evidence "must demonstrate bad faith or be so gross as to amount to affirmative misconduct." *MedChoice Risk Retention Group Inc. v. Katz*, C17-387-TSZ, 2017 WL 3970867, at *7 (W.D. Wash. Sept. 8, 2017) (indirectly quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)); *Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO*, 530 F.3d 817, 828 n.6 (9th Cir. 2008) (noting that the Court could not revisit an arbitrator's erroneous ruling excluding evidence as hearsay) (citing *Misco*, 484 U.S. at 40). Verity must also show that it was prejudiced from the refusal to hear evidence. *See Katz*, 2017 WL 3970867, at *7.

Verity has not shown bad faith or affirmative misconduct by the Arbitrator nor has it shown that it has suffered prejudice. Rather, Verity argues that it lacked sufficient time to respond to T-Mobile's Second Request for Emergency Relief and "expose" the true motive behind Verity's termination. However, the record reflects "[o]n or about March 19, 2021, Verity received a letter from T-Mobile, informing it that T-Mobile was terminating the Agreements because Verity had materially breached them by engaging in chum fraud by deactivating Sprint customers and activating them on the T-Mobile network." Dkt. 8-1, Declaration of Anthony Farinola, ¶ 15. Verity did not specifically deny those practices in the sworn declarations that it submitted. *See* Dkt. 8-1 (April 20, 2021); Dkt. 8-2 (May 4, 2021). Instead, Verity claimed that other "[w]ireless providers often 'allow' or 'disregard' a certain percentage of churn fraud among their authorized dealers." Dkt. 8-1, Farinola Decl. ¶ 10. Thus, Verity was aware of the "true motive" behind T-Mobile's termination as it countered by claiming that churn fraud is permitted by wireless providers other than T-Mobile.

REPORT AND RECOMMENDATION - 11

More importantly, the "true motive behind Verity's termination" was not relevant to the sole issue before the Arbitrator. That issue was whether T-Mobile had shown a clear legal right to prohibit Verity's sale of its stores to competitors and if so, whether T-Mobile's fear of an immediate invasion of that right was well grounded and that it would suffer irreparable harm. Dkt. 13-4, p. 3. The Arbitrator specifically found that Section 13 of the Agreements prohibits Verity's sale of its stores to competitors of T-Mobile and that Verity acknowledged its intent to sell its remaining stores to a T-Mobile competitor, thus constituting irreparable harm. *Id.*

In sum, Verity has not shown that the Arbitrator acted in bad faith in failing to conduct an evidentiary hearing on the irrelevant question of T-Mobile's "motive" in termination. *See United States Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1175 (9th Cir. 2010) ("Arbitrators enjoy wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit."); *see also Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) (an evidentiary hearing is not required to award a preliminary injunction in court).

## CONCLUSION

The Arbitrator found that the Injunction was "necessary to preserve the status quo," because T-Mobile had shown a "clear legal right" to prohibit the sale of T-Mobile stores to competitors and that it would suffer irreparable harm were that right violated – a right Verity acknowledged it intended to violate. Dkt. 13-4, p. 3.

Because the Injunction is a temporary equitable order calculated to preserve assets or performance needed to make a potential final award in the parties' dispute meaningful, it is a final order that can be reviewed for confirmation and enforcement by a district court under the

REPORT AND RECOMMENDATION - 12

FAA. Accordingly, the undersigned recommends that T-Mobile's amended petition (Dkt. 13) be **GRANTED** and that the District Court confirm the Injunction.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 6, 2021**. The Clerk should note the matter for **August 9, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages. The failure to timely object may affect the right to appeal.

DATED this 22nd day of July, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13